**FILED**
**U.S. District Court**
**District of Kansas**
09/28/2026
**Clerk, U.S. District Court**
**By: SND Deputy Clerk**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**MALIK W. DORSEY,**

**Plaintiff,**

**v.** **CASE NO. 26-3244-JWL**

**UNITED STATES OF AMERICA, et al.,**

**Defendants.**

**MEMORANDUM AND ORDER**

This is a pro se civil action pursuant to 42 U.S.C. § 1983 filed by Plaintiff and state pretrial detainee Malik W. Dorsey, who is currently incarcerated at the Saline County Jail ("SCJ") in Salina, Kansas. (Doc. 1.) Plaintiff has been granted leave to proceed in forma pauperis. (Doc. 6.) For the reasons set forth below, the Court will deny the five pending motions and dismiss both Count III of the amended complaint and the portion of Count II that asserts a First Amendment claim. The Court finds that Plaintiff's excessive force claim in Count III cannot be processed without additional information, which the Court will direct the appropriate officials to provide.

## I. Procedural History

On July 17, 2026, Plaintiff filed the complaint that began this case. (Doc. 1.) Because Plaintiff is a prisoner and proceeds in forma pauperis, the Court was required by statute to screen his complaint and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). The screening revealed deficiencies that left the complaint subject to dismissal in its entirety. Specifically, (1) the complaint left unclear what parties Plaintiff intended to name as Defendants; (2) some of the parties apparently named as

Defendants cannot be sued under 42 U.S.C. § 1983; (3) the complaint asserted claims based on the commission of crimes, which is not a basis for relief under § 1983; (4) other claims in the complaint failed to identify the federal right that was allegedly violated; (5) the excessive force claims were based on the actions of individuals not named as Defendants; (6) the complaint did not contain sufficient facts to state a plausible claim of excessive force or retaliation; (7) another claim failed to allege acts by any specific individual; and (8) Plaintiff requested some relief that is not available under § 1983. (Doc. 8, p. 4-12.)

Thus, on August 11, 2026, the Court issued a memorandum and order ("M&O") identifying the deficiencies and granting Plaintiff time to file a complete and proper amended complaint that cured them. *See id.* The M&O explained to Plaintiff that his amended complaint must be filed on the required form and would not supplement the original complaint, it would completely replace it. *Id.* Therefore, Plaintiff needed to ensure that the amended complaint contained all allegations and claims he wished to pursue in this case. *Id.*

On August 20, 2026, the Court received Plaintiff's timely amended complaint, submitted on the required form. (Doc. 9.) Four days later, the Court received from Plaintiff a document titled "Motion for Relief – Update" (Doc. 10) that stated requests for relief in addition to those stated in the amended complaint and a document, not on the required form, titled "Amended Complaint" (Doc. 11) that, liberally construed, appeared to be an attempt to supplement the claims and supporting facts in the already-filed amended complaint. On August 25, 2026, the Court issued a second M&O addressing these filings. (Doc. 12.)

The second M&O first told Plaintiff that the motion for relief (Doc. 10) would be denied and the Court would not consider the information contained in the handwritten "Amended Complaint" received after the amended complaint filed on the required form. (Doc. 12, p. 1.) It

reminded Plaintiff of the first M&O's instruction to include all claims and factual allegations in his amended complaint. *Id.* at 1-2. Additionally, the second M&O explained that the Federal Rules of Civil Procedure governing supplemental pleadings do not allow the sort of piecemeal supplements Plaintiff had submitted. *Id.* at 2-3. Because the two documents received after the amended complaint indicated that Plaintiff wanted to amend the information in the amended complaint, however, the Court granted Plaintiff "one final opportunity to file an amended pleading," cautioning him:

> To be clear, . . . the Court does not anticipate allowing further amendments beyond this final opportunity. If Plaintiff chooses to file a second amended complaint, he must ensure that all claims and factual allegations he wishes to pursue in this case are included in his second amended complaint, that all claims and defendants in the second amended complaint are properly joined, and that the second amended complaint contains sufficient alleged facts to state a plausible claim against each named Defendant.

*Id.* at 3.

The second M&O then turned to the contents of the amended complaint, which named only two Defendants: SCJ Officers Logan Andrew Toneys and Kaiden Matthew Bunger. *See id*. It described the amended complaint as follows:

> As the background of the case, Plaintiff explains that Defendant Bunger punched him three times instead of restraining him and that one of the Defendants picked him up by his neck and choked him. In Count I, Plaintiff asserts that Defendant Bunger used excessive force on him in violation of his Fourth, Fifth, and Fourteenth Amendment rights. As supporting facts for Count I, Plaintiff alleges that on the morning of April 15, 2026, he was slammed to the ground. At that point, instead of simply restraining him, Defendant Bunger struck Plaintiff three times with a closed fist, which Plaintiff asserts was excessive force.
>
> In Count II, Plaintiff alleges that Defendant Toneys used excessive force on him in violation of his Fourth, Fifth, and Fourteenth Amendment rights. As supporting facts for Count II, Plaintiff alleges that around 11:00 a.m. on April 24, 2026, Defendant Toneys slammed Plaintiff's head into the ground three times and attempted to break his neck. In Count III, Plaintiff asserts that on April 16, 2026, Defendant Toneys similarly used unconstitutional excessive force on him by "smacking" him and slamming his head into the ground three times. As relief in

> this case, Plaintiff seeks to have Defendants' "taxes sent to [Plaintiff]," all of their assets "placed in [Plaintiff's] name," the termination of both Defendants' employment at the SCJ, an order directing Defendants to "bond [Plaintiff] out," the criminal prosecution of both Defendants, and $900,000,000.00 in money damages.

(Doc. 12, p. 3-4 (citations omitted).)

After setting forth the screening standards, the second M&O stated: "The Court concludes that Count I, when liberally construed, asserts a plausible claim for relief against Defendant Bunger based on the use of unconstitutional excessive force. Thus, Count I, as it is pled in the amended complaint, passes screening." *Id.* at 5. On the other hand, the second M&O noted, Counts II and III were not properly joined in the same lawsuit as Count I. *Id.* at 5. The second M&O set forth the Federal Rules of Civil Procedure that govern permissive joinder of defendants and claims and explained how those rules are applied, including that to cure the joinder problem, the Court could sever Counts II and III into a separate case. *Id.* at 5-7. Because Counts II and III of the amended complaint failed to state a plausible claim for relief, however, the Court was more inclined to dismiss Counts II and III—and Defendant Toneys, against whom those counts were brought—without prejudice and proceed only on Count I against Defendant Bunger. *Id.* at 7.

The second M&O continued:

> If Plaintiff wishes to file a second amended complaint that alleges sufficient facts to state a plausible claim for relief against Defendant Toneys, he may do so by the deadline set forth in this order. Plaintiff must understand, however, that if he chooses to file a second amended complaint, it will be screened under the same standards applied to the initial complaint and the amended complaint. The Court will treat any second amended complaint as complete in and of itself. (*See* Doc. 8, p. 12 (explaining that an amended complaint completely replaces any previously filed complaint).) If Plaintiff files a second amended complaint, he must ensure that he alleges sufficient facts in that second amended complaint to again state a plausible claim against Defendant Bunger. If he fails to do so, the fact that he stated a plausible claim against Defendant Bunger in Count I of the *amended* complaint will not save Count I from dismissal.

(Doc. 12, p. 8.) The second M&O then identified for Plaintiff which of the requests for relief in

the amended complaint were subject to dismissal. *Id.* at 8-10. It concluded by granting Plaintiff until September 26, 2026 to file a second amended complaint or otherwise respond and advising Plaintiff "to carefully read this order in full before submitting a second amended complaint." *Id.* at 11.

As noted above, the second M&O issued on August 25, 2026. (Doc. 12.) The following day, the Court received from Plaintiff two pages titled "Amended Complaint" that appear intended to supplement Count 2 of the amended complaint. (Doc. 13.) On August 27, 2026, the Court received one page titled "Amended Complaint" that appears intended to supplement Count 3 of the amended complaint and one page titled "Motion for Relief" that appears intended to supplement the requests for relief in the amended complaint. (Doc. 15.) On September 2, 2026, the Court received another "Motion for Relief" containing additional requests for relief. (Doc. 16.) On September 4, 2026, the Court received from Plaintiff a three-page document titled "Updated Amended Complaint" that asserted three counts. (Doc. 17.)

On September 8, 2026, the Court received from Plaintiff an additional page titled "B Amended Complaint Last Update [*sic*]" and set forth the background of the case. (Doc. 18.) The same day, the Court received another "Motion for Relief" containing additional requests for relief (Doc. 20) and a second amended complaint on the form provided for Plaintiff to file his second amended complaint in this case. (Doc. 19.) Other than the September 8, 2026 second amended complaint, none of the purported "amended complaints" were on the required form.

The contents of the second amended complaint (Doc. 19) are discussed below. The Court began the statutorily required screening of the second amended complaint, but on September 10, 2026, it received from Plaintiff yet another "Motion for Relief" with additional requests for relief (Doc. 21) and a motion for appointment of counsel (Doc. 22).

## II. The Pending Supplements and Motions (Docs. 13, 14, 15, 16, 17, 18, 20, 21, and 22)

As the Court explained to Plaintiff in the second M&O, he is not permitted to supplement a pleading—whether it is a complaint, amended complaint, or second amended complaint—by submitting multiple supplements or amendments a piece at a time. (*See* Doc. 12, p. 1-3.) Thus, the Court will not consider any information in the supplemental filings. It will only consider factual allegations and claims contained within the second amended complaint (Doc. 19) and it will deny all pending motions that seek to amend or supplement a complaint filed in this matter.

Plaintiff also moves for the appointment of counsel. (Doc. 22.) There is no constitutional right to appointment of counsel in a civil case. *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995). "Rather, a court has discretion to *request* an attorney to represent a litigant who is proceeding in forma pauperis" in a civil case. *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006) (emphasis added) (citing 28 U.S.C. § 1915(e)(1)). In other words, if this motion is granted, it means only that the Court will request that an attorney volunteer to be appointed to represent Plaintiff at no cost to Plaintiff. The Court cannot guarantee that an attorney will volunteer. *See Rachel v. Troutt*, 820 F.3d 390, 396 (10th Cir. 2016) ("Courts are not authorized to appoint counsel in § 1983 cases; instead, courts can only 'request' an attorney to take a case.").

The decision whether to appoint counsel—meaning to request counsel to provide representation at no cost to Plaintiff—in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant appointment of counsel. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted

[the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (citing *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to request volunteer counsel for Plaintiff, the Court has considered "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115. For the reasons set forth below, the Court has concluded that this matter will be dismissed without prejudice for failure to state a plausible claim for relief. Thus, the Court will deny the motion for appointment of counsel.

**III. The Second Amended Complaint (Doc. 19)**

In the second amended complaint, Plaintiff names SCJ Officer Toneys as the sole Defendant. (Doc. 19, p. 1-2.) Plaintiff has blacked out the portion of the form dedicated to stating Count I. *Id.* at 3. In Count II, Plaintiff asserts that Defendant Toneys violated his First and Fifth Amendment rights. *Id.* at 3-4. As supporting facts for Count II, Plaintiff alleges that on April 16, 2026, at approximately 2:00 p.m., Defendant Toneys punched Plaintiff in the nose with what Defendant Toneys later called "a diversionary strike" and then bashed Plaintiff's head into the ground three times, knocking Plaintiff unconscious "for a second" and—Plaintiff believes—cracking his skull. *Id.* at 3-4. Plaintiff states that Defendant Toneys' actions were "in response to [Plaintiff] allegedly spitting on him" and he points out that Defendant Toneys could have broken his nose. *Id.* at 3-4.

In Count III, Plaintiff asserts another claim of excessive force by Defendant Toneys, in violation of his First and Fifth Amendment rights. *Id.* at 5. As supporting facts for Count III, Plaintiff alleges that on April 24, 2026, at approximately 10:49 a.m., Defendant Toneys picked Plaintiff up by the neck, took him to the back of a cell, and "bashed/forced [Plaintiff's] head in to

the ground 3 times." *Id.* at 5-6. At different points in Count II, Plaintiff asserts that the blows to his head on April 24, 2026 "knocked [him] unconscious for a second," "knocked [him] out," and "almost knocked [him] out." *Id.* at 5-6. Plaintiff further contends that Defendant Toneys then "attempted to snap [Plaintiff's] neck [but] then stopped himself." *Id.* at 6. Plaintiff asserts that the incident made him uncomfortable and left him with PTSD. *Id.* at 5-6. As relief in this case, Plaintiff seeks "a change of venue" and $800,000,000.00. *Id.* at 7.

## IV. Analysis

The Court is required by statute to screen Plaintiff's second amended complaint and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). The applicable screening standards are set forth in detail in the M&O and will not be repeated in full here. (*See* Doc. 8, p. 3-4.) It is sufficient to note that during screening, the Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008 )(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

First, to the extent that Plaintiff asserts a First Amendment retaliation claim, he has failed to state a claim for relief. The first M&O explained:

To state a First Amendment retaliation claim, Plaintiff must show:

> (1) that [he] was engaged in constitutionally protected activity; (2) that the defendant[s'] actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant[s']

> adverse action was substantially motivated as a response to [his] exercise of constitutionally protected conduct.
>
> *Hinkle v. Becham County Bd. of County Comm'rs*, 962 F.3d 1204, 1226 (10th Cir. 2020) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

(Doc. 8, p. 9.)

Plaintiff asserts that Defendant Toneys used the force at issue in Count II of the second amended complaint "in response to [Plaintiff] allegedly spitting on him." (Doc. 19, p. 4.) Simply put, Plaintiff has no constitutional right to spit on Defendant Toneys. Thus, even taking as true that the allegation of Plaintiff spitting was the sole motivation for Defendant Toneys applying force to Plaintiff on April 16, 2026, Defendant Toneys did not engage in unconstitutional retaliation in violation of the First Amendment. The facts Plaintiff asserts in Count III of the second amended complaint do not assert any motivation for Defendant Toney's behavior. Therefore, this Court cannot conclude that Plaintiff has plausibly asserted that the behavior was substantially motivated as a response to Plaintiff engaging in constitutionally protected activity. Neither Count II nor Count III state a plausible claim of retaliation.

That leaves Plaintiff's claims of excessive force in Counts II and III. As explained in the second M&O:

> To demonstrate excessive force, a pretrial detainee must provide objective evidence that shows the challenged use of force was not rationally related to a legitimate governmental objective or that it was excessive in relation to that objective. [*Geddes v. Weber County*, 2022 WL 3371010,] *4 [(10th Cir. 2022) (unpublished), *cert. denied* Feb. 21, 2023)] (quoting *Colbruno v. Kessler*, 928 F.3d 1155, 1163 (10th Cir. 2019), which quoted *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). Although Plaintiff has identified events in April 2026 that appear to be intended to support his excessive force claims, he has not alleged sufficient facts for this Court to conclude that the force was not rationally related to a legitimate governmental objective or that the force was excessive in relation to that objective. In other words, Plaintiff details the force that was used on him, but he does not explain the circumstances surrounding the use of force. He fails to allege any events leading up to the use of force or, in the alternative, to allege that the use of force was not prompted by any other events. He simply does not provide additional

> context for the use of force. Without that context, Plaintiff has failed to state a plausible claim for excessive force.

(Doc. 12, p. 7 (quoting Doc. 8, p. 8-9).)

Count III of the second amended complaint clearly suffers from the same deficiency as the excessive force claims Plaintiff asserted in the amended complaint, which are discussed in the language quoted above. In Count III of the second amended complaint, Plaintiff describes the force Defendant Toneys used on Plaintiff on April 24, 2026, but he provides no context for the interaction. (*See* Doc. 19, p. 5-7.) Without any context, Count III fails to state a plausible claim of excessive force.

Count II is a closer call because Plaintiff alleges that Defendant Toneys punched him in the nose then bashed his head into the ground three times "in response to [Plaintiff] allegedly spitting on [Defendant Toneys]." *Id.* at 4. The Court finds that proper processing of Plaintiff's excessive force claim in Count II cannot be achieved without additional information from appropriate officials of the Saline County Jail. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate officials of the Saline County Jail to prepare and file a *Martinez* report regarding Plaintiff's excessive force claim in Count II of the second amended complaint. Once the report has been received, the Court can properly screen Plaintiff's remaining claim under 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED** that Plaintiff's motions (Docs. 15, 16, 20, 21, and 22) are denied for the reasons set forth in this order.

**IT IS FURTHER ORDERED** that Count III of the second amended complaint and the portion of Count II argues a First Amendment violation are dismissed without prejudice for failure to state a claim on which relief could be granted.

**IT IS FURTHER ORDERED** that:

(1) The SCJ officials shall submit the *Martinez* Report on or before **November 9, 2026.** Upon the filing of that Report, the Court will screen the excessive force claim in Count II of Plaintiff's second amended complaint. If the excessive force claim in Count II of the second amended complaint survives screening, the Court will enter a separate order serving Defendant and setting an answer deadline.

(2) Officials responsible for the operation of the SCJ are directed to undertake a review of the subject matter of the excessive force claim in Count II of the second amended complaint:

a. To ascertain the facts and circumstances;

b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the claim; and

c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this claim and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the SCJ officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The SCJ officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings

related to Plaintiff's claims shall also be included. The SCJ officials shall redact and/or mute audio for any personal identifiers included in any video or recording submitted.

(5) Authorization is granted to the SCJ officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6) No motion or other document addressed to the second amended complaint shall be filed until the Court has reviewed the *Martinez* Report and entered an order screening the remaining claim in the second amended complaint.

(7) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the second amended complaint. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter Saline County Sheriff Roger Soldan as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, the Saline County Sheriff may move for termination from this action. Copies of this order shall be transmitted to Plaintiff, Defendant, Sheriff Soldan, and the County Attorney for Saline County.

**IT IS SO ORDERED.**

DATED: This 28th day of September, 2026, at Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge